UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATALIA USMANOV, JULIANN SCOTT, **Plaintiffs,** v. MASSACHUSETTS FINANCIAL SERVICES COMPANY, **Defendant.** | Civil Action No.: |

## COMPLAINT AND JURY TRIAL DEMAND

## I. PARTIES

1. Plaintiff, Natalia Usmanov, (hereinafter, the "Plaintiff" or "Usmanov") is a resident of Salem, Massachusetts, and was employed as an Assistant Vice President of IT Quality Assurance at Massachusetts Financial Services Company, located in Boston, Massachusetts.

2. Plaintiff, Juliann Scott, (hereinafter the "Plaintiff or "Scott") is a resident of Dartmouth, Massachusetts, and was employed as a IT Software Architect at Massachusetts Financial Services Company, located in Boston, Massachusetts.

3. Defendant, Massachusetts Financial Services Company, (hereinafter, "MFS") is a Delaware corporation and a global investment manager, founded in 1924.  MFS is located at 111 Huntington Avenue, Boston, Massachusetts.

4. MFS is one of the oldest asset management companies in the world and has been credited with pioneering the mutual fund.  MFS has offices all over the world. Their international headquarters are located in Boston, Massachusetts.

1

5. MFS has at all relevant times depicted in this matter participated in the facts alleged herein and specifically with the establishment and application of policies and procedures relative to requiring employees to receive the COVID-19 vaccine as a condition of remaining employed, including definition and procedure relating to exemptions for religious beliefs and medical accommodations.

## II.  JURISDICTION

6. The Court has jurisdiction in this matter pursuant to 42 U.S.C § 1983 and Sec 2000e-5 (f) and 28 U.S.C §§ 2201, 2202 and Sec 1331 and 1343 (a) and has supplemental jurisdiction over State law claims.

## UNITED STATES EQUAL OPPORTUNITY COMMISSION ("EEOC") CHARGE

7. Usmanov filed timely charges with the MCAD.  The MCAD has issued Usmanov her "right-to-sue" notice.  She brings this lawsuit within ninety (90) days of receipt of her "right-to-sue" notice. All preconditions for filing this lawsuit have been performed or have occurred.

8. Scott filed timely charges with the EEOC.  The EEOC has issued Scott her "right-to-sue" notice.  She brings this lawsuit within ninety (90) days of receipt of her "right-to-sue" notice. All preconditions for filing this lawsuit have been performed or have occurred.

## III.  FACTS

9. The Defendant is an employer within the meaning of 42 U.S.C. Sec 2000e (b) and M.G.L. C 151B, Sec1(5).

10. Commensurate with the outbreak of the COVID-19 virus (hereinafter, "COVID-19") and continuing to date, Defendant issued a number of policies with respect to

its employees and visitors with the alleged goal of protecting its from the COVID-19 virus, including the prospect of contracting and/or spreading the disease.

11. Commencing mid-March 2020, Defendant required all employees to work from home. Limited staff were permitted to work on-site at MFS and were required to wear a face mask. COVID-19 testing was permitted on a limited basis, stating the reason that doing so was the best way to minimize the spread of COVID-19.

12. In September of 2021, Defendant announced its own "Mandatory Vaccine Policy," (hereinafter, the "Vaccine Policy"), which required all of its employees to be vaccinated against the COVID-19 virus and to then provide proof of this vaccination by December 8, 2021.

13. The Defendant's alleged reasoning was, "We believe this is the best approach to take to keep our employees and clients safe, and it mirrors the feedback we've received from employees about their desire to remove as much uncertainty and risk as possible from the office environment when they return. As you may have seen in the news, the US government issued new requirements for larger companies with respect to vaccine mandates."

14. The Defendant's Vaccine Policy applied to all U.S. employees even if they worked completely remotely.

15. Defendant's Vaccine Policy included a provision for "unvaccinated visitors" stating, "Visitors must complete the onsite visitor questionnaire located on the COVID 19 page. If they are unvaccinated then the meeting should be done virtually."

16. Defendant's Vaccine Policy contained a provision for employees to apply for exemptions and accommodations due to their sincerely held religious beliefs and/or medical contraindications. Exemption submissions were due by December 1, 2021.

17. Both Plaintiffs submitted religious exemptions and requested accommodations due to their sincerely held religious beliefs.

18. Both Plaintiffs were denied their requests for accommodations cause of their sincerely held religious beliefs.

**Plaintiff Natalia Usmanov**

19. In 1997, Usmanov emigrated to the United States.

20. Due to Usmanov's religious beliefs, she has never received any vaccinations after 1997.

21. On May 20, 2013, Defendant hired Usmanov and gave her a full-time in the IT position in the Quality Assurance (hereinafter, "QA") Department as a Senior QA Analyst. During her employment at MFS, she had an exemplary track record, consistently delivering projects within established deadlines.

22. Usmanov was professionally recognized amongst her peers, and because of her exemplary performance, was promoted multiple times from Senior QA Analyst to Principal QA Analyst, later to QA Manager and subsequently awarded an officer title of Assistant Vice President of IT Quality Assurance at MFS.

23. Usmanov was a dedicated loyal employee. She valued and enjoyed her work at MFS. She should have had a long career there including retirement.

24. When Usmanov was wrongfully discharged from MFS, she was employed full-time, working from home. The majority of her work day was spent in online team

meetings. Twenty-five (25) MFS IT employees reported directly to Usmanov. Of these twenty-five employees managed by Usmanov, only three (3) worked out of the Boston MFS site, while the other twenty-two (22) employees worked remotely from India and Mexico.

25. Usmanov was considered an MFS employee "in good standing". As such, she could work remotely for MFS from any location in the world.

26. On October 26, 2021, Usmanov filed a religious exemption requesting accommodations from Defendant's Vaccine Policy. She submitted it via forms provided by MFS' Human Resources Department. Additionally, Usmanov submitted a separate personal letter regarding her sincerely held religious beliefs, as well as a letter from her Primary Physician confirming that she has not received any vaccines since 1997.

27. Usmanov offered an accommodation to Defendant in lieu of receiving the COVID-19 vaccination that she would wear a face mask and submit to COVID-19 testing when she was required to be onsite at MFS.

28. On April 7, 2022, Usmanov received an email from MFS' Human Resources Department rejecting her application for religious accommodation to Defendant's Vaccine Policy for a second time. She was informed that, "*Employees that do not provide proof of vaccination after having their accommodation exemption denied will be considered out of compliance with MFS' vaccine mandate. If you do not comply with MFS' vaccine mandate, you will be allowed to continue working until May 6th, at which point you will be considered to have resigned your position*." This

left Usmanov feeling violated and discriminated against because she asserted her sincerely held religious beliefs.

29. Usmanov was permitted to work at MFS six (6) months past the deadline of December 6, 2021 without having received a COVID-19 vaccination.,

30. Prior to COVID-19, Usmanov worked 100% remotely for three (3) years. In spite of her remote-only work schedule, she earned "mastered performance" on her 2021 end-of-year review, which gained her an added financial bonus.

31. The Defendant has stained Usmanov's employment record with a forced termination and a "policy violation" now noted in her employment record, making it extreme difficult for her to find new employment.

**Plaintiff Juliann Scott**

32. Scott was employed by MFS for thirty (30) years as a Software Architect in the IT Department.

33. In 2008, Scott was diagnosed with Multiple Sclerosis (hereinafter, "MS").

34. In 2009 after an MS relapse, MFS accommodated Scott's requested medical exemption and afforded her the opportunity to work remotely four (4) days per week, with one (1) day in the MFS office.

35. In 2019, Scott suffered another MS relapse. Defendant accommodated Scott's requested medical exemption and afforded her the ability to work remotely from home on a full-time basis.

36. In 2020, Scott was promoted from Programmer Analyst VI to Software Architect.

37. On November 18, 2021, Scott filed a request for religious accommodation to be exempt from Defendant's Vaccine Policy because of her sincerely held religious beliefs. She had previously submitted an email requesting a religious exemption.

38. In February 2022, Scott received her 2021 year-end-bonus, which was substantially higher than previous bonuses. This was attributed to a promotion Scott received in 2021, as she was doing more and more at MFS i.e. software upgrades, security champion, training other programmers on the ancient Java code, writing documentation on "how to's", etc.

39. On March 4, 2022, Scott was instructed by Ms. Cynthia Crisp, MFS Human Resources Representative, that if she was not vaccinated, she would be terminated.

40. On March 31, 2022, Human Resources informed Scott that MFS is not approving any religious exemptions, only extending the COVID-19 vaccination deadline, as MFS expected all employees to return to the office in person.

41. Defendant wrongly concluded that the Plaintiffs "voluntarily resigned" their employment. However, they were given no choice ("Hobsen's Choice").

42. Under such policy, employees that applied for a religious exemption were not to be placed on administrative leave or deemed to have voluntarily terminated their employment pending determination of the exemption request.

43. Usmanov did not voluntarily end her employment with Defendant.

44. Scott did not voluntarily end her employment with Defendant.

45. Accordingly, Defendant failed to engage in any meaningful interactive process for the purpose of accommodating applicants for either medical or religious exemptions.

46. Upon information and belief, MFS had direct knowledge that the Covid-19 vaccines are ineffective and does not prevent the spread of the disease because vaccinated people can still be infected with the COVID-19 virus and they still spread said virus.

47. Upon information and belief, MFS had direct knowledge of potential risks, side effects and harm caused to the recipient of such "MRNA" vaccines, that MFS failed to disclose to Plaintiffs at or after subjecting them to the Vaccine Policy.

48. Usmanov's application for a Religious Exemption, requesting to be exempt from the COVID-19 vaccine, was denied, and she was wrongfully terminated by MFS on May 20, 2022.

49. Scott's application for a Religious Exemption was denied, and she was wrongfully terminated by MFS on March 31, 2022.

50. Usmanov suffered damages as a result of Defendant's actions including, but not limited to, lost wages, lost benefits, loss of bonuses, costs related to survival without income from work with Defendant as well as emotional stress to herself and her family.

51. Scott suffered damages as a result of Defendant's actions including, but not limited to, lost wages, lost benefits, loss of bonuses, costs related to survival without income from work with Defendant as well as emotional stress to herself and her family.

52. Usmanov requested accommodations from Defendant.

53. Scott requested accommodations from Defendant.

54. Defendant failed to engage in any meaningful process to determine whether it could accommodate their requests and simply denied both Plaintiffs' requests indicating that their requests created an undue hardship on Defendant while asserting that Plaintiffs' proposals were inferior to the COVID-19 vaccine in achieving the goals of their Vaccine Policy. Defendant followed their denials with termination of the Plaintiffs.

55. Following an announcement by the Food and Drug Administration (hereinafter, "FDA") on August 2, 2021, claiming that vaccines were ninety-one percent (91%) effective in preventing COVID-19 (Pfizer), it became immediately clear that was not true.

56. Illustrating by example are the following list of visible persons that became affected by COVID-19 despite having been injected by a COVID-19 vaccine along with the date their infection was announced:

| Date | Person |
|---|---|
| 08-19-2021 | U.S. Senator John Hickenlooper |
| | U.S. Senator Angus King |
| | U.S. Senator Roger Wicker |
| 10-19-2021 | Dept Homeland Security Secretary Alejandro Mayorkas |
| 12-19-2021 | U.S. Senator Elizabeth Warren |
| 01-02-2022 | Dept of Justice Secretary Lloyd Austin |
| 03-13-2022 | U.S. President Barack Obama |
| 03-31-2022 | CIA Director William Burns |
| 04-05-2022 | U.S. Attorney General Merrick Garland |
| 04-07-2022 | U.S. House Speaker Nancy Pelosi |

| | |
|---|---|
| 04-09-2022 | U.S. Dept of Agriculture Secretary Tim Vilsack |
| 04-26-2022 | U.S. Vice-President Kamala Harris |
| 05-04-2022 | U.S. Secretary of State Anthony Blinken |
| 06-01-2022 | U.S. Labor Secretary Marty Walsh |
| 06-15-2022 | Dr. Anthony Fauci |
| 06-2022 | U.S. Senator Wicker for 3rd time (02-2022) |
| 07-10-2022 | U.S. Senate Majority Leader Charles Schumer |
| 07-21-2022 | U.S. President Joseph Biden |
| 10-22-2022 | CDC Director Rochelle Walensky |

57. Public Health Officials now acknowledge the fallacy of claims of protection afforded **by vaccines against COVID-19**.

    a. **Dr. Deborah Birx** (Former White House Coronavirus Response Coordinator): "I knew these vaccines were not going to protect against infection and I think we overplayed the vaccines". *https:/youtu.be/8aYqTIg1A*

    b. **Dr. Anthony Fauci**:

    "We know that people get infected and then get reinfected and people get vaccinated, and they get infected. So, immunity isn't measured in decades or lifetimes. It's measured in several months".

    *https://www.marketwatch.com/articles/Anthony-fauci-covid-19-biden-immunity-51658437525?shtied=nf-rss*

58. As of August 2020, the Centers for Disease Control and Prevention (hereinafter, "CDC") guidance on COVID-19 protection changed to eliminate differentiation based on whether a person received vaccination and now concede that so-called

COVID-19 vaccines do not prevent those injected with same from contracting, suffering and/or spreading COVID-19.

59. The majority of persons now hospitalized for COVID-19 related issues have received vaccinations and caught the COVID-19 virus anyway.

60. Defendant's "Vaccine Policy" was based on false and deceptive claims that the vaccine was required to prevent them from contracting the virus and spreading it to others, all of which was known by Defendant.

61. As of June 15, 2021, the Massachusetts Governor terminated the "COVID-19" State of Emergency. As a matter of law and fact, after June 15, 2021, the Commonwealth of Massachusetts declared there was no longer any "Covid-19 Emergency" in existence—long before Defendant's Vaccine Policy.

62. Increasingly, it is becoming clear that COVID-19 vaccines did not afford the protection to the person injected or those they came into contact with and, in fact, may have both short and long-term adverse effects on the injected person

63. Defendant terminated Usmanov for resisting being injected with the COVID-19 vaccine due to her sincerely held religious beliefs and Defendant refused accommodations to her by use of masks, periodic testing, and working from home, stating same to be inferior to the vaccine.

64. Defendant terminated Scott for resisting being injected due to her sincerely held religious beliefs and Defendant refused accommodations to her by use of masks, periodic testing, and working from home, stating same to be inferior to the vaccine.

65. Defendant's instant degradation of masks and periodic testing by labeling them as "inferior" and unacceptable accommodation, along with Defendant's unrealistic

reliance on experimental vaccines, place Defendant's historical position in question and now expose serious liberties taken by Defendant with the lives and well-being of Plaintiffs, their families and contacts.

66. Usmanov suffered financially, emotionally, psychologically and lost reputation, as Defendant wrongly terminated her and claimed that she chose to voluntarily terminate her employment.

67. Scott suffered financially, emotionally, psychologically and lost reputation, as Defendant wrongly terminated her and claimed that she chose to voluntarily terminate her employment.

## CLAIMS FOR RELIEF

### COUNT I
### GOOD FAITH AND FAIR DEALING

68. The Plaintiffs re-allege and incorporates the foregoing paragraphs 1-67 as set forth again here.

69. The Defendant wrongly terminated the Plaintiffs' employment and caused them financial loss of income, loss of pension, loss of medical benefits, and caused them mental distress because of their sincerely held religious beliefs.

70. Said actions by the Defendant were wrongful, intentional, and against public policy.

71. In taking the detrimental actions as stated herein, the Defendant violated its duty of good faith and fair dealing.

### COUNT II
### ASSAULT

72. The Plaintiffs re-allege the foregoing Paragraphs 1-71 as if set forth again here.

73. The actions of the Defendant placed the Plaintiffs in fear and apprehension of imminent bodily harm.

## COUNT III
## VIOLATION OF M.G.L. CHAPTER 151 AND VIOLATION OF TITLE VII

74. The Plaintiffs re-allege the foregoing Paragraphs 1-73 as if set forth again here.

75. The Plaintiffs at all relevant times were engaged in protected activity under M.G.L. Chapter 151 and 42 USC § 2000e *et seq*.

76. The Defendant wrongly, arbitrarily and capriciously denied the Plaintiffs a religious exemption and accommodation from having to inject themselves with the COVID-19 vaccine.

77. The Defendant retaliated against the Plaintiffs because they refused to be injected with the COVID-19 vaccine because of their sincerely held religious beliefs.

78. The Defendant at all times knew, or should have known, that the COVID-19 vaccine did not prevent contracting nor spreading the disease.

## COUNT IV
## VIOLATION OF PLAINTIFFS' EQUAL PROTECTION AND TREATMENT RIGHTS

79. The Plaintiffs re-allege the foregoing Paragraphs 1-78 as if set forth again here.

80. The actions of the Defendant denied the Plaintiffs their rights to Equal Protection and Equal Treatment as guaranteed to them by the United States Constitution.

81. Pursuant to the Fourteenth Amendment to the United States Constitution, the Plaintiffs have the right to the Equal Protection and Due Process of Laws.

82. The Plaintiffs had the right to be treated equally, the same and fairly as their co-workers who elected to receive the COVID-19 vaccine.

83. The Plaintiffs were not treated the same as other employees who opted to receive the COVID-19 vaccine who did not have sincerely held religious beliefs. The Plaintiffs were wrongly let go from their employment.

84. The Defendant at all times knew, or should have known, that the COVID-19 vaccine did not prevent contracting nor spreading of the disease.

## COUNT V
## VIOLATION OF PLAINTIFFS' SUBSTANTIVE AND PROCEDURAL DUE PROCESS RIGHTS

85. The Plaintiffs re-allege the foregoing Paragraphs 1-84 as if set forth again here.

86. The actions of the Defendant denied the Plaintiffs their rights to Due Process of Law as guaranteed to them by the United States Constitution.

87. The Plaintiffs have the right and protected interest under the First, Fourth and Fourteenth Amendment to the United States Constitution and Articles IV, X, XX, XXI, XXIX, and XXX of the Massachusetts Declaration of Rights to be free from the invasion of bodily integrity and to be free from unwanted medical intervention.

88. Because of these rights enjoyed by the Plaintiffs directly under both the United States Constitution and the Massachusetts Declaration of Rights as mentioned above, Plaintiffs' substantive due process rights were denied when the Defendant mandated the COVID-19 vaccine upon the Plaintiffs, refused to honor their sincerely held religious beliefs and grant them Religious Exemption and Accommodation from said vaccine and wrongfully terminating them from their employment in retaliation.

89. Because of the Defendant's action and inactions as aforementioned, the Plaintiffs' procedural due process rights were denied and violated.

90. The Plaintiffs have a procedural due process right to Fair and Equal Treatment by the Defendant in considering the Plaintiffs' sincerely held religious beliefs and accommodating said belief; in this case, by allowing the Plaintiffs to continue working remotely but wearing a mask and taking COVID-19 tests when physically at the Defendant's work premises, which leading authorities agree are effective measures in preventing the spread of the disease.

91. The Defendant at all times knew, or should have known, that the COVID-19 vaccine did not prevent contracting nor spreading of the disease.

## COUNT IV
## VIOLATION OF M.G.L. CHAPTER 151 AND VIOLATION OF TITLE VII

92. The Plaintiffs re-allege the foregoing Paragraphs 1-91 as if set forth again here.

93. At all relevant times, Plaintiffs were engaged in protected activity under M.G.L. c. 151 and Title VII, upon which they suffered adverse employment action connected to such protected activity.

94. Defendant constructively terminated Plaintiffs' employment, which was motivated by retaliatory animus.

95. Defendant engaged in unlawful acts of subterfuge with specific intent to deprive the Plaintiffs.

**WHEREFORE, PLAINTIFFS PRAY THAT THIS HONORABLE COURT:**

Enter Judgment against the Defendant, finding that the Defendant's conduct was knowingly and intentionally in bad faith, with knowledge or reason to know that their acts would cause substantial hardship to BOTH the Plaintiffs, and against public policy and common law, for damages as follows:

A. A declaration that Plaintiffs' constitutional rights were violated and an order requiring just proper and equitable relief.

B. A finding for each Plaintiff that each Claim and Count set forth herein and an order for an amount to be determined at the trial of this matter.

C. Compensatory damages in the amount of Two Million Dollars ("$2,000,000.00") for each Plaintiff.

D. Punitive damages in the amount of One Million Dollars ("$1,000,000.00") for each Plaintiff.

E. Award reasonable attorneys' fees and costs of this action to each of the Plaintiffs.

F. Such other and further relief that this Honorable Court finds meet. just, proper and equitable.

**<u>THE PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL COUNTS.</u>**

                                      Respectfully submitted,
                                      The Plaintiffs,
                                      Natalia Usmanov and
                                      Juliann Scott,
                                      By their attorneys,

DATED: July 21, 2023

                                      <u>*/s/ Richard C. Chambers, Jr., Esq.*</u>
                                      Richard C. Chambers, Jr., Esq.
                                      BBO#: 651251
                                      Chambers Law Office
                                      220 Broadway, Suite 404
                                      Lynnfield, MA 01940
                                      Office: (781) 581-2031
                                      Cell: (781) 363-1773
                                      Fax: (781) 581-8449
                                      Email: Richard@chamberslawoffice.com

DATED: July 21, 2023

                                      <u>*/s/ Joseph Spinale., Esq.*</u>
                                      Joseph Spinale, Esq.
                                      BBO#: 548547
                                      Chambers Law Office
                                      220 Broadway, Suite 404
                                      Lynnfield, MA 01940
                                      Office: (781) 581-2031
                                      Cell: (781) 838-1411
                                      Fax: (781) 581-8449
                                      Email: Joe@chamberslawoffice.com