UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| NATALIA USMANOV and JULIANN SCOTT,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>MASSACHUSETTS FINANCIAL SERVICES COMPANY,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)　　No. 1:23-cv-11631-JEK<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS**

**KOBICK, J.**

　　Plaintiffs Natalia Usmanov and Juliann Scott worked for Massachusetts Financial Services Company ("MFS") until the spring of 2022, when they lost their jobs for refusing on religious grounds to be vaccinated against COVID-19, as required by company policy. They allege that MFS wrongfully terminated them in violation of their statutory and constitutional rights. MFS moves to dismiss their complaint for lack of timely service and for failure to state a claim. That motion will be granted in part and denied in part. The plaintiffs' failure to effectuate timely service by four days will be excused, but their constitutional claims and claims of retaliation will be dismissed under Federal Rule of Civil Procedure 12(b)(6). The plaintiffs have, however, sufficiently stated claims for religious discrimination under Title VII and M.G.L. c. 151B, § 4.

**BACKGROUND**

　　The following facts, drawn from the amended complaint, are assumed true. MFS hired Usmanov in 2013 as a Senior Quality Assurance Analyst. ECF 5, ¶ 23. By 2021, following a series of promotions, she held the position of Assistant Vice President of IT Quality Assurance. *Id.* ¶ 24.

Case 1:23-cv-11631-JEK   Document 30   Filed 09/03/24   Page 2 of 14


Before the COVID-19 pandemic, she had worked remotely for MFS for three years. *Id.* ¶ 32. Scott worked for MFS for thirty years and, by 2020, held the position of Software Architect. *Id.* ¶¶ 34, 38. As an accommodation for a medical condition, she began working remotely for MFS full-time in 2019. *Id.* ¶ 37.

In March 2020, in response to the COVID-19 pandemic, MFS required its employees to work from home. *Id.* ¶ 12. In September 2021, MFS announced a policy requiring its employees to be vaccinated against COVID-19 and to provide proof of vaccination by December 8, 2021. *Id.* ¶ 13. Employees with religious objections or medical contraindications had until December 1, 2021 to submit applications for exemptions. *Id.* ¶ 17. Both plaintiffs filed applications for exemptions and went through an interactive process that required them to state their religious beliefs in detail and explain how those beliefs prevented them from taking the vaccine. *Id.* ¶¶ 18-19. Usmanov alleges that due to her "particular sincerely held Christian religious beliefs," she has not received vaccinations since 1997. *Id.* ¶¶ 22, 28. She "believes her body was created by God and it is against her religion to be injected with an artificial vaccine, which suppresses her God given natural immunity." *Id.* ¶ 22. Scott likewise "believes her body was created by God and it is against her religion to be injected with an artificial vaccine, which suppresses her God given natural immunity." *Id.* ¶ 42.

MFS denied both plaintiffs' requests for exemptions from its vaccination policy. *Id.* ¶¶ 20, 30, 43. The plaintiffs were given additional time to comply with the mandate, and when they remained unvaccinated, MFS considered them to have resigned from their positions. *Id.* ¶¶ 30, 43-44. Both plaintiffs allege that their termination from employment at MFS was not voluntary. *Id.* ¶¶ 44, 46, 49-50.

The plaintiffs filed their initial complaint in this action on July 21, 2023, and their amended complaint on October 18, 2023. ECF 1, 5. They allege that MFS's denial of their request for an accommodation from its vaccine mandate amounted to religious discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and M.G.L. c. 151B, § 4 (Count I); violated their Fourteenth Amendment equal protection rights (Count II); and violated their procedural and substantive due process rights under the Fourteenth Amendment and Massachusetts Declaration of Rights (Count III). ECF 5, ¶¶ 68-85. MFS was served with the amended complaint on October 23, 2023. ECF 6. Plaintiffs' counsel submitted an affidavit attesting that the amended complaint was given to a process server on October 19, 2023, with an assurance same-day service was possible. ECF 16-1, ¶¶ 7-8.

## DISCUSSION

I.   **Timeliness of Service.**

MFS first moves to dismiss the plaintiffs' amended complaint under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process. Rule 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). Upon a showing of good cause for failure to effectuate timely service, "the court must extend the time for service for an appropriate period." *Id.* Even absent a showing of good cause, however, courts retain discretion to enlarge the period of time for service. *See Henderson v. United States*, 517 U.S. 654, 662-63 (1996) ("[I]n [the] 1993 amendments to the Rules, courts [were] accorded discretion to enlarge the [service] period 'even if there is no good cause shown.'" (quoting Advisory Comm.'s Notes on

Fed. R. Civ. P. 4)); *Bell v. Rinchem Co., Inc.*, No. 4:14-cv-40177-TSH, 2014 WL 11290899, at *4 (D. Mass. Mar. 10, 2016) (same).

Having filed their original complaint on July 21, 2023, the plaintiffs had 90 days, or until Thursday, October 19, 2023, to serve MFS. *See* Fed. R. Civ. P. 4(m). There is no dispute that the plaintiffs did not meet this deadline or seek an enlargement of time before the deadline. Instead, they served an amended complaint on MFS on Monday, October 23, 2023. ECF 6. MFS contends that this amounted to double error. First, MFS points out, the original complaint was not timely served. Second, MFS argues that under the then-operative version of Fed. R. Civ. P. 15(a), the plaintiffs could amend their complaint within 21 days of serving it, within 21 days of service of MFS's responsive pleading, with the opposing party's written consent, or with leave of court.[1] Because the original complaint was never served (and thus no responsive pleading was served), and the plaintiffs did not obtain the defendant's written consent or leave of court, MFS contends, the amended complaint itself is improperly filed.

---

[1] The version of Rule 15(a) in effect as of the October 2023 filing of the amended complaint provided:

> (1) *Amending as a Matter of Course.* A party may amend its pleading once as a matter of course *within*: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
> (2) *Other Amendments*. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a) (2022) (emphasis added). Effective December 1, 2023, Rule 15(a)(1) was amended to begin, "[a] party may amend its pleading once as a matter of course *no later than*," with the remainder of Rule 15(a)(1) unchanged. Fed. R. Civ. P. 15(a)(1) (eff. Dec. 1, 2023) (emphasis added). The Advisory Committee Notes state that the substitution of "no later than" for "within" was intended to make "clear that the right to amend continues without interruption until 21 days after the earlier of the events described in Rule 15(a)(1)(B)." Advisory Comm.'s Notes on Fed. R. Civ. P. 15.

The plaintiffs, who bear the burden of proving proper service, make two principal counterarguments. *See Rivera-Lopez v. Municipality of Dorado*, 979 F.2d 885, 887 (1st Cir. 1992). First, relying on an affidavit of a paralegal at their counsel's law firm, they contend that good cause exists for enlarging the period to serve the complaint. The affidavit represents that, on the morning of October 19, 2023, the paralegal brought the amended complaint and summons to the Suffolk County Sheriff's Office and received an assurance that the documents would be served that day. ECF 16-1, ¶ 8. That did not happen, however, and the documents were not served until October 23, 2023. *Id.* ¶ 12. Second, even absent good cause, the plaintiffs contend, the Court should exercise its discretion to enlarge the time for service. The plaintiffs point out that the delay did not prejudice MFS, which was on notice of their claims from prior administrative proceedings before the Equal Employment Opportunity Commission ("EEOC") and Massachusetts Commission Against Discrimination ("MCAD"), ECF 5, ¶¶ 6-7, and that their counsel sought, unsuccessfully, to contact MFS's counsel in advance of the 90-day deadline to ask if counsel would accept service.

The plaintiffs have not established good cause for their failure to timely serve MFS. They waited until the last possible day—day 90—to bring their summons and amended complaint to the Suffolk County Sheriff's Office in an effort to arrange for same-day service. But "[l]ast minute attempts at service, absent some explanatory justification, do not establish good cause." *McIsaac v. Ford*, 193 F. Supp. 2d 382, 383 (D. Mass. 2002). The plaintiffs have offered no explanation for their lack of diligence in this regard. And no other exceptional factor, "be it process server error, a defendant's evasion of service, a plaintiff's pro se or in forma pauperis status, or some other 'understandable mitigating circumstance,'" is present here. *Bell*, 2014 WL 11290899, at *6 (quoting *id.*).

Absent good cause, a court may exercise its discretion to extend the period for effectuating service. *Bunn v. Gleason*, 250 F.R.D. 86, 88 (D. Mass. 2008). Factors to consider include "whether '(a) the party to be served received actual notice of the lawsuit; (b) the defendant would suffer prejudice; and (c) [the] plaintiff would be severely prejudiced if his complaint were dismissed.'" *H & A Corp. v. United States*, No. 14-cv-13783-MLW, 2015 WL 5610816, at *2 (D. Mass. Sept. 22, 2015) (quoting *Riverdale Mills Corp. v. United States Dep't of Transp. Fed. Aviation Admin.*, 225 F.R.D. 393, 395 (D. Mass. 2005)). The balance of these factors favors an extension of time for service here. As the plaintiffs point out, MFS has been on notice of their claims because of the parties' prior administrative proceedings before the EEOC and MCAD. MFS will suffer no prejudice from a four-day enlargement of time. It will not, for example, be constrained in mounting its defense. *See Bunn*, 250 F.R.D. at 90-91 (finding prejudice where the delay in service affected the defendant's recollection of the underlying events). And without an extension, Scott may be time-barred from refiling her action because she has only ninety days to file suit after receiving her right-to-sue letter from the EEOC, which was issued on April 24, 2023. *See* 42 U.S.C. § 2000e-5(f)(1); *Franceschi v. U.S. Dep't of Veteran Affairs*, 514 F.3d 81, 85 (1st Cir. 2008); ECF 15-1.

Because the discretionary factors weigh in favor of enlarging the plaintiffs' time to serve, the Court will exercise its discretion to enlarge the plaintiffs' time by four days and deem their amended complaint timely served. *See Crevier v. Town of Spencer*, No. 05-cv-40184-FDS, 2007 WL 120237, at *5 (D. Mass. Jan. 12, 2007) (enlarging the time under Rule 4(m) where "the delay in serving the Town was relatively short (three days), there [wa]s little danger of prejudice to the defendant, and the consequence to plaintiff [wa]s severe" because the applicable statute of limitations would bar the action if refiled). That determination is fortified by the principle that, where consistent with applicable rules, "the law . . . manifests a strong preference that cases be

6

resolved on their merits." *Keane v. HSBC Bank USA for Ellington Tr., Series 2007-2*, 874 F.3d 763, 765 (1st Cir. 2017). Although plaintiffs' counsel should have exhibited more diligence in complying with the rules governing service of process, resolution of the plaintiffs' claims on the merits is the preferable course in the circumstances of this case.

For similar reasons, the plaintiffs' amended complaint is not subject to dismissal as an improper pleading. MFS is correct that, under the version of Rule 15(a) in effect at the time of the filing and service of the amended complaint, the plaintiffs should have obtained leave of court or written consent from MFS before filing. Nevertheless, Rule 15(a) instructs courts to "freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), and the Court construes the plaintiffs' filings opposing the motion to dismiss as a retroactive request for leave to amend. That request will be granted in view of the lack of prejudice to MFS and the fact that MFS had notice of the plaintiffs' claims and allegations. In addition, the version of Rule 15(a) in effect as of December 1, 2023—less than two months after the plaintiffs filed and served their amended complaint—would allow their amendment without leave of court. *See supra* note 1; Fed. R. Civ. P. 15(a)(1)(A) ("A party may amend its pleading once as a matter of course *no later than* . . . 21 days after serving it." (emphasis added)). Under the circumstances, the interests of justice are best served by deeming the amended complaint properly filed. MFS's motion to dismiss under Federal Rule of Civil Procedure 12(b)(5) is, accordingly, denied.

**II.     The Plaintiffs Have Plausibly Alleged Religious Discrimination in Violation of Title VII and Chapter 151B, But Their Other Claims Must Be Dismissed.**

Contending in the alternative that the plaintiffs fail to state a claim upon which relief can be granted, MFS moves to dismiss each of their claims under Federal Rule of Civil Procedure 12(b)(6). In evaluating such a motion, the Court must determine "'whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintif[f], the complaint states a

claim for which relief can be granted.'" *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011)). The complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The Court "may properly consider only facts and documents that are part of or incorporated into the complaint." *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009) (quotation marks omitted).

    A.    <u>Religious Discrimination Claims.</u>

Count I of the amended complaint asserts that MFS's failure to accommodate the plaintiffs' sincerely held religious beliefs, and its subsequent termination of their employment, amounted to religious discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, and M.G.L. c. 151B, § 4. Both statutes prohibit employers from discriminating on the basis of religion. *See* 42 U.S.C. § 2000e-2(a); M.G.L. c. 151B, § 4(1A). To make out a claim of religious discrimination under the statutes,[2] the plaintiffs "must first show 'that a bona fide religious practice conflicts with an employment requirement and was the reason for the adverse employment action.'" *Bazinet v. Beth Israel Lahey Health*, --- F.4th ---, 2024 WL3770708, at *4 (1st Cir. 2024) (quoting *Lowe v. Mills*, 68 F.4th 706, 719 (1st Cir. 2023)). If the plaintiffs make that showing, the burden shifts to MFS "to show that it 'offered a reasonable accommodation or, if it did not offer an accommodation, that doing so would have resulted in undue hardship.'" *Id.* (quoting *Lowe*, 68 F.4th at 719).

---

[2] Religious discrimination claims under Title VII and Chapter 151B are generally analyzed under the same framework. *See Cloutier v. Costco Wholesale Corp.*, 390 F.3d 126, 131-32 (1st Cir. 2004); *Brown v. F.L. Roberts & Co., Inc.*, 452 Mass. 674, 676-77 (2008).

MFS does not dispute the sincerity of the plaintiffs' religious beliefs or the fact that they were subject to an adverse employment action when they lost their jobs. Instead, it contends that the plaintiffs have failed to allege that their refusal to be vaccinated against COVID-19, as required by MFS policy, was rooted in a bona fide religious practice. In MFS's view, to plausibly allege a bona fide religious objection to an employer's policy, a "complaint must allege some plausible set of facts from which it may be reasonably inferred *both* that [the plaintiff] believes in or practices a particular form of religion *and* that her religion has a specific tenet or principle that does not permit her to be vaccinated." *Griffin v. Massachusetts Dep't of Revenue*, No. 22-cv-11991-FDS, 2023 WL 4685942, at *7 (D. Mass. July 20, 2023), *appeal pending*, No. 23-1668 (1st Cir.) (emphases in original).

Assuming, without deciding, that the plaintiffs must allege these elements to state a plausible claim of religious discrimination under Title VII and Chapter 151B, they have met the standard. Usmanov alleges that she has "particular sincerely held Christian religious beliefs," and that because of those beliefs, she has received no vaccinations since 1997. ECF 5, ¶¶ 22, 28. Scott does not identify her religion, but both plaintiffs believe that their "bod[ies] w[ere] created by God and it is against [their] religion to be injected with an artificial vaccine, which suppresses [their] God given natural immunity." *Id.* ¶¶ 22, 42. Both plaintiffs thus allege that they practice a particular form of religion and believe in God. And both plaintiffs identify a particular religious tenet—that injection of an artificial vaccine would suppress the natural immunity given to them by God—that conflicts with MFS's requirement that they be vaccinated against COVID-19. These allegations are not merely conclusory assertions of religious belief; rather, the plaintiffs allege with adequate specificity that their adherence to a religious tenet is inconsistent with their former employer's policy. *See Bazinet*, 2024 WL3770708, at *4 (declining to decide whether an

9

"unelaborated assertion" of religious belief "may be insufficient on its own to allege a religious practice or belief in support of a religious discrimination claim"). While the sufficiency of Scott's allegations is a closer question than the sufficiency of Usmanov's, particularly in light of Usmanov's decades-long history of vaccine refusal on religious grounds, the Court concludes that both plaintiffs have sufficiently alleged claims of religious discrimination under Title VII and Chapter 151B.

MFS counters that, as alleged in the amended complaint, the plaintiffs' refusal to be vaccinated was motivated more by personal or medical concerns about the efficacy of the vaccine than by religious belief. In MFS's view, the plaintiffs' allegations show that they believed the COVID-19 vaccine would harm their immune system, but the allegations do not support an inference that their concerns about immunosuppression are rooted in religion. The Court declines to engage in this fine parsing of the amended complaint. Construing the amended complaint in the light most favorable to the plaintiffs, as the Court must on a motion to dismiss, it plausibly alleges that the plaintiffs believe their bodies and natural immunity are of divine origin, and that their belief in the sacredness of these "natural" gifts from God conflicts with a requirement that they receive an "artificial" vaccine. ECF 5, ¶¶ 22, 42. MFS also points out that other portions of the amended complaint dispute the efficacy of COVID-19 vaccines. *See id.* ¶¶ 55-62. But a person may object to an employment requirement on multiple bases, and "the mere fact that there is 'overlap between a religious and political view does not [necessarily] place [the view] outside the scope of Title VII's religious protections.'" *Bazinet*, 2024 WL3770708, at \*6 (quoting *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 901 (8th Cir. 2024)).

MFS's motion to dismiss will therefore be denied as to the religious discrimination claims asserted in Count I.

B.     Retaliation Claims.

Count I also alleges that MFS's termination of the plaintiffs' employment amounted to unlawful retaliation, in violation of Title VII, 42 U.S.C. § 2000e-3(a), and Chapter 151B, § 4 for their refusal to receive a COVID-19 vaccine. ECF 5, ¶ 71. To make out a prima facie case of retaliation under both statutes, the plaintiffs must allege that "(1) [they] engaged in protected conduct; (2) suffered an adverse employment action; and (3) [that] there was a causal connection between the protected conduct and the adverse action." *Jones v. Walgreen Co.*, 679 F.3d 9, 20 n.7 (1st Cir. 2012) (quotation marks omitted). If the plaintiffs can establish a prima facie case, "the burden shifts to [MFS] to articulate a legitimate, nondiscriminatory [or nonretaliatory] reason for its employment decision." *Id.* at 20 (quotation marks omitted). If MFS meets this burden, the plaintiffs "must then show that the proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory animus." *Id.* at 21 (quotation marks omitted).

Even if the refusal to take a COVID-19 vaccine constitutes protected conduct, MFS contends, the plaintiffs have not alleged facts to support the inference that there was a causal connection between that conduct and their loss of employment. This Court has explained that causation is not plausibly alleged "where the enacted vaccination policies, which specify the consequences of non-compliance in advance, predate any [religion or ADA]-based opposition to the policy, including refusal to comply." *Hines v. Ellis Nursing Home, Inc.*, No. 23-cv-10874-DJC, 2023 WL 7619035, at *5 (D. Mass. Nov. 14, 2023) (collecting cases in the analogous Americans with Disabilities Act context). Put otherwise, where an employer provides notice of a mandatory vaccination policy and the consequences for noncompliance, and then terminates a plaintiff's employment in accordance with that policy, a plaintiff cannot make out a prima facie case of

11

retaliation unless they allege facts that go beyond the employer's mere enforcement of its policy. *See id.*

Those additional facts are not present in this case. The plaintiffs do not allege that they opposed the vaccine mandate before it was announced by MFS in September 2021, such that an inference of retaliation may be made. Nor is there any allegation allowing for an inference that MFS retaliated against the plaintiffs for their opposition to its mandate. Rather, the amended complaint alleges that the plaintiffs were terminated after MFS denied their applications for religious exemptions. ECF 5, ¶¶ 49-50. It thus supports the inference that the plaintiffs were terminated for their refusal to comply with MFS's policy, not for engaging in protected conduct. The plaintiffs do not dispute this conclusion; their opposition brief devotes a single sentence to opposing MFS's argument that they have not plausibly alleged retaliation claims, and that sentence simply quotes the text of 42 U.S.C. § 2000e-3(a). *See* ECF 16, at 13-14. Accordingly, MFS's motion to dismiss the plaintiffs' retaliation claims will be granted.

  C.  Federal and State Constitutional Claims.

Counts II and III of the amended complaint allege that MFS violated the plaintiffs' Fourteenth Amendment equal protection and due process rights, respectively, by terminating their employment after refusing their request for an exemption from its COVID-19 vaccine policy. These claims are asserted pursuant to 42 U.S.C. § 1983, *see* ECF 5, ¶ 5, which "furnishes a private right of action against any person who, while acting under color of state law, deprives another (or causes another to be deprived) of rights secured either by the Constitution or by federal law," *Cruz-Arce v. Mgmt. Admin. Servs. Corp.*, 19 F.4th 538, 543 (1st Cir. 2021). "To make out a section 1983 claim, a plaintiff must allege facts sufficient to show that the defendants acted under color of state law and caused the deprivation of federal rights." *Id.* Section 1983 "does not apply to 'merely

private conduct, no matter how discriminatory or wrongful.'" *Grapentine v. Pawtucket Credit Union*, 755 F.3d 29, 31 (1st Cir. 2014) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50 (1999)).

The amended complaint does not allege that MFS acted under color of state law or that its conduct was "'fairly attributable to the State'" when it terminated the plaintiffs' employment. *Cruz-Arce*, 19 F.4th at 543 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). The plaintiffs do not point to a single allegation in the amended complaint that could support such a theory; at most, they contend that whether a private entity like MFS is a state actor is a matter of fact that cannot be resolved on a motion to dismiss. But the plaintiffs bear the burden of alleging a plausible entitlement to relief, and absent any allegations that MFS operated as a state actor, their federal constitutional claims under Section 1983 lack facial plausibility. *See, e.g.*, *Grapentine*, 755 F.3d at 34 (affirming allowance of motion to dismiss when complaint failed to allege that the conduct of the defendant, a private actor, could be ascribed to the state); *Mead v. Indep. Ass'n*, 684 F.3d 226, 231-32 (1st Cir. 2012) (same). The claims alleging Fourteenth Amendment violations will, accordingly, be dismissed.

The plaintiffs' substantive and procedural due process claims under the Massachusetts Declaration of Rights, asserted in Count III of the amended complaint, must be dismissed for the same reason. The Supreme Judicial Court has explained that "the concept of due process of law" under the Massachusetts Declaration of Rights "inherently is concerned with governmental action." *Phillips v. Youth Dev. Program, Inc.*, 390 Mass. 652, 658 (1983); *see also Boston Phoenix, Inc. v. New England Tel. & Tel. Co.*, 5 Mass. L. Rptr. 547, 1996 WL 473998, at *13 (Mass. Super.

13

Ct. Aug. 12, 1996) ("state action is required" with "respect to Art. 12 (due process)").[3] The plaintiffs do not allege that MFS's vaccine policy or its termination of their employment bore any nexus to government action, even a nexus less fulsome than that required by the federal Constitution. *See Phillips*, 390 Mass. at 658-59 (because the SJC "may fashion its own concepts of due process of law under the Constitution of the Commonwealth," it "need not define State action as the Supreme Court of the United States has defined State action for Fourteenth Amendment and § 1983 purposes" in "determining what is State action for State due process of law purposes"). And the plaintiffs' opposition brief does not respond to MFS's contention that the state constitutional claims founder for want of an allegation of state action. Accordingly, the plaintiffs fail to state plausible due process claims under the Massachusetts Declaration of Rights.

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss, ECF 14, is GRANTED in part and DENIED in part. The motion to dismiss for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5) is DENIED. The motion to dismiss for failure to state a claim under Rule 12(b)(6) is DENIED with respect to the religious discrimination claims alleged in Count I, and otherwise GRANTED.

SO ORDERED.

Dated: September 3, 2024

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

---

[3] Not all provisions of the Declaration of Rights are directed at restraining government action exclusively. Article 9, which protects a right of ballot access, encompassing a right to solicit nominating signatures in support of that access, does not require state action. *See Batchelder v. Allied Stores Int'l, Inc.*, 388 Mass. 83, 88-89 (1983). And the Supreme Judicial Court has left open the question whether the free speech protections of Article 16 require state action. *See Glovsky v. Roche Bros. Supermarkets*, 469 Mass. 752, 755 n.4 (2014) ("[A]rt. 16 of the Massachusetts Declaration of Rights, which protects free speech, may contain a State action requirement." (citing *Roman v. Trustees of Tufts Coll.*, 461 Mass. 707, 713 (2012))).